IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| US RISK INSURANCE GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:11-cv-2843-M-BN |
| | § | |
| UNITED STATES RISK | § | |
| MANAGEMENT, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant United States Risk Management ("Defendant" or "USRM") seeks summary judgment against Plaintiff US Risk Insurance Group, Inc. ("Plaintiff" or "USRIG") on each of the causes of action asserted in Plaintiff's First Amended Complaint. *See* Dkt. No. 39-1. Defendant also seeks summary judgment on its affirmative defenses. *See id.*; Dkt. No. 88-1. The District Court has referred this case to the undersigned magistrate judge for pretrial management, including recommendations on dispositive motions. *See* Dkt. No. 96. The undersigned recommends that Defendant's Motion for Summary Judgment [Dkt. No. 39] and Supplemental Motion for Summary Judgment [Dkt. No. 88] be denied in their entirety.

**I. Background**

The summary judgment evidence, when all facts are viewed and all reasonable inferences are drawn in the light most favorable to Plaintiff as the

nonmoving party and all disputed factual controversies are resolved in Plaintiff's favor, shows the following. Defendant is in the "business of technical consulting in the field of environmental science; environmental testing and inspection services, namely environmental sampling and analysis services; analysis of water and air quality; providing information in the field of collection of evidence for forensic purposes; engineering services in the field of environmental compliance; and toxicology services." Dkt. No. 39-3 at 2 (¶ 3). Moreover, Defendant states that it is "not in the business of selling, underwriting, brokering insurance, or managing insurance claims; rather [its] only relation to insurance is the assistance it provides to insurance carriers and policy holders in the fields of industrial hygiene, environmental, and safety consulting." *Id.* at 3 (¶ 5). Defendant registered a word mark – "US Risk United States Risk Management, L.L.C." – and a design mark (design plus words, letters, and/or numbers) on August 24, 2010. *See id.* at 73-74.

Defendant's website, at several points, describes its services as "minimizing risk" and "strategies to recognize, evaluate and control [risks] to property, personnel, and corporate reputations." Dkt. No. 51-2 at 1, 2 & 10. Defendant supports its clients' "environmental, health, and safety needs in risk management in the Gulf South." *Id.* at 2. Most of Defendant's work involves environmental risk, including assistance with regulatory guidelines and risk assessment and solutions, *see, e.g.*, *id.* at 1, 2, 12, 14, 15, but Defendant also offers several other services, including "insurance services," *id.* at 24. Defendant is not the insurance provider or underwriter; rather, Defendant "assists the insurance carriers and policy holders in environmental insurance coverage disputes." *Id.* Defendant also provides property

damage assessments and assists with insurance underwriting risk evaluation. *See id.*

Plaintiff is a "specialty lines underwriting manager and wholesale broker." Dkt. No. 39-3 at 37; Dkt. No. 51-4 at 17. Plaintiff provides services to individuals and Fortune 500 companies, some of which are insurance carriers and policy holders. *See* Dkt. No. 39 at 7. One of Plaintiff's subsidiaries, U.S. Risk, Inc., is a specialty lines underwriting manager and wholesale broker and uses the "U.S. Risk" mark to promote and offer its risk and insurance management services. *See* Dkt. No. 51-1 at 3 (¶ 9). U.S. Risk, Inc. markets and sells its products to approximately 5,000 retail producing insurance agents in the United States that work with U.S. Risk, Inc. to manage risks for consumers. *See id.* Additionally, U.S. Risk, Inc. has over 200 plus insurance company markets that it can place business with or underwrite on behalf of in the United States and internationally. *See id.*

The U.S. Risk, Inc. entity also operates nine domestic branches and offers a broad range of risk and insurance management products and services through its wholesale brokerage and underwriting divisions: U.S. Risk Brokers, Inc. (U.S. Risk Brokers) and U.S. Risk Underwriters, Inc. (U.S. Underwriters). *See* Dkt. No. 51-1 at 3 (¶ 9). U.S. Risk Brokers offers all forms of property, casualty, automobile, umbrella, professional, and risk management products and services and secure property and casualty insurance coverage for virtually any type of business. *See id.* at 3-4 (¶ 10). U.S. Risk Brokers offers all types of general insurance and specializes in property and casualty insurance pertaining to healthcare industry contractors, liquor liability, habitational risks, oil and gas industry, professional liability,

aviation, marine, products liability, entertainment, parking and valet services, and financial services coverage. *See id.* U.S. Underwriters has underwriting authorities for various insurance companies that write business on a national level. *See id.* at 4 (¶ 11). These companies both utilize the "U.S. Risk" mark. *See id.* at 3 (¶ 9*)*.

U.S. Risk Financial Services is another division of Plaintiff. *See id.* at 4 (¶ 12). U.S. Risk Financial Services offers a "comprehensive array of insurance products and risk management services for the financial and lender services industries," and it has been in continuous operation since 1992. *Id.* Other operating divisions under Plaintiff's control include U.S. Risk of California, Inc. and U.S. Risk of Virginia, Inc. *See id.* at 5 (¶ 13). These companies "are actively involved in the risk and insurance management business and promote their services using the US RISK family mark." *Id.*

Plaintiff has been using its "U.S. Risk" mark, name, and brand since at least as early as September 1990. *See* Dkt. No. 39-3 at 24. The word mark "U.S. Risk" was registered by Plaintiff on June 25, 1996. *See id.* at 71; Dkt. No. 51-1 at 1 (¶ 4) & 9. After five years of continuous use, Plaintiff filed its Section 15 Declaration, and, after ten years of continuous use, Plaintiff filed its Section 8 Declaration. *See* Dkt. No. 51-1 at 1-2 (¶ 4). Plaintiff's mark has been consistently used in commerce for at least 22 years, and, during that time, Plaintiff has spent substantial amounts on advertising to bolster the good will and visibility of its mark. *See* Dkt. No. 39-3 at 32. More specifically, since 2004, Plaintiff has spent an estimated $7,698,202.41 on marketing, advertising, and promotion of the "U.S. Risk" family mark. *See* Dkt. No. 51-1 at 7 (¶ 21) & 23. Plaintiff advertises in trade magazines, publications, and

email blasts, on Plaintiff's and its subsidiaries' websites, and through word of mouth and face-to-face meetings. *See* Dkt. No. 39-3 at 38; Dkt. No. 51-1 at 7 (¶ 21). Additionally, Plaintiff's employees attend various trade shows and other speaking engagements. *See* Dkt. No. 39-3 at 38; Dkt. No. 51-1 at 7 (¶ 21).

In September 2007, counsel for Plaintiff became aware that Defendant was advertising and selling products and/or services using the name "U.S. Risk." *See* Dkt. No. 51-1 at 5 (¶ 14). At that time, Plaintiff sent a cease-and-desist letter to Defendant. *See id.* at 5 (¶ 14), 18-19. In March 2009, Defendant contacted Plaintiff, seeking its consent for Defendant to register the business name "United States Risk Management, LLC" as an entity doing business in the state of Texas. *See id.* at 5 (¶ 15). Plaintiff denied Defendant's request. *See id.* In denying Defendant's request, counsel for Plaintiff sent Defendant a letter explaining some of the history of the relationship between Plaintiff and Defendant and the trademarks at issue and put Defendant on notice of Plaintiff's senior mark. *See id.*; Dkt. No. 39-3 at 11-13. Hearing nothing from Defendant in response, Plaintiff assumed that Defendant complied with its request. *See* Dkt. No. 51-1 at 5 (¶ 15).

In June 2011, Plaintiff sold the assets of a subsidiary company that "provided onsite risk assessments to clients by providing a detailed review of the effectiveness of site-specific safety protocols, practices, documentation, management processes, and other risk factors." Dkt. No. 51-1 at 5-6 (¶ 6). Plaintiff maintained a shell company with which Plaintiff intended to reenter this business area by June 2014, at the latest. *See id.* In fact, Plaintiff intended to rename the recently sold company as "U.S. Risk Management" and provide "consulting, risk management, and other

potential loss control services." Dkt. No. 39-3 at 21. Plaintiff was prevented from renaming its subsidiary "U.S. Risk Management" due to its similarity to Defendant's name. *See id.*

According to Plaintiff, the "Insurance Services" and "Risk Management Services" offered by Defendant are also offered by Plaintiff and its subsidiaries under the "U.S. Risk" brand and marks. *See id.* at 23. Via affidavit testimony, Plaintiff puts forth evidence that individuals have confused the two companies. For instance, at an industry conference when Richard Schwartz, Plaintiff's Vice President and General Counsel, introduced himself as working for Plaintiff, the person to whom he was talking thought Mr. Schwartz meant the "loss control" company – Defendant. *See* Dkt. No. 51-1 at 6 (¶ 19). A similar incident occurred with Randall Goss, wherein someone thought that U.S. Risk was the "loss control" people – again, a reference to Defendant. *See* Dkt. No. 51-5 at 22 (¶ 3). A senior broker/underwriter at U.S. Risk, Inc. received a telephone call in early 2012 from an insurance agent who misidentified Plaintiff for Defendant. *See id.* at 24. Finally, Plaintiff received a quote from an outside vendor for some work to be done at Plaintiff's headquarters, and that quote included Plaintiff's address, but the logo attached to the quote was that of Defendant. *See id.* at 2, 5.

After learning in 2011 that Defendant was using the U.S. Risk mark, *see* Dkt. No. 51-1 at 6 (¶ 18), Plaintiff filed the instant lawsuit on October 21, 2011, *see* Dkt. No. 1. Plaintiff brought claims for trademark infringement, false designation of origin and false advertising, and cancellation of registration. *See id.* Plaintiff later

filed an amended complaint that included claims for unfair competition, trademark dilution, and unjust enrichment. *See* Dkt. No. 37.

Defendant moves for summary judgment on all of Plaintiff's claims and on Defendant's affirmative defenses. *See* Dkt. No. 39-1; Dkt. No. 88-1.

## II. Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a]

failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

While this district's Local Civil Rules do not require the parties to submit statements or counter-statements of undisputed facts, where the Defendant cites a fact that Plaintiffs do not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 2:04-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

### III. Analysis

Plaintiff brings claims for federal and common law trademark infringement, false designation of origin, federal and Texas trademark dilution, federal and common law unfair competition, and unjust enrichment and seeks cancellation of Defendant's trademark. *See* Dkt. No. 37. Defendant moves for summary judgment on all of Plaintiff's claims. Defendant also moves for summary judgment based on its affirmative defenses of judicial estoppel and the fair use doctrine.

### A.    Trademark Infringement

Defendant moves for summary judgment on Plaintiff's trademark infringement claim. Defendant argues Plaintiff does not have, and has not presented, any evidence to support its trademark infringement claims. *See* Dkt. No. 39-1; Dkt. No. 88-1. Moreover, Defendant claims that any evidence that Plaintiff may have to support its trademark infringement claim is insufficient and does not create a fact issue. Defendant also contends that judicial estoppel operates to prohibit Plaintiff from asserting certain of its arguments. Finally, Defendant claims that, even if a claim for trademark infringement might exist, summary judgment on Defendant's statutory fair use defense is warranted. *See* Dkt. No. 55 at 3-8.

To prevail on the trademark infringement claim, Plaintiff must prove (1) its ownership of a legally protectable mark and (2) a likelihood of confusion between Plaintiff's mark and a mark utilized by Defendant. *See Amazing Paces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2012). A legally protectable mark is one that is "distinctive." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). That is, the mark must be "capable of distinguishing the [plaintiff's] goods

from those of others." *Id.*; *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). "A registered mark is 'presumed to be distinctive.'" *S&H Indus. v. Selander*, No. 3:11-cv-2988-M-BH, ___ F. Supp. 2d ____, 2013 WL 1131077, at *4 (N.D. Tex. Mar. 19, 2013) (citations omitted).

Defendant does not appear to contest that Plaintiff owns a legally protectable trademark. *See* Dkt. No. 39-1 at 18-19. To the extent that Defendant does contest this factor, the undersigned finds that the first prong is met. Plaintiff's mark is registered and has been in use for over 10 continuous years. *See* Dkt. No. 51-1 at 1-2, 9. As such, Plaintiff's own a legally protectable mark. *See S&H Indus.*, 2013 WL 1131077, at *4 ("It is 'prima facie evidence of a mark's validity and of the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services[,]' where the mark is registered. Also, 'where a mark has been in use for five continuous years after the date of registration, the mark is considered 'incontestable,' and the registration 'constitutes 'conclusive evidence' of [the] right to use the mark, subject only to the [] defenses enumerated in 15 U.S.C. § 1115(b).'"" (citations omitted)); *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 407 (N.D. Tex. 2011).

The primary inquiry, then, is whether a fact issue exists with respect to the second factor: a likelihood of confusion between the plaintiff's mark and the defendant's mark. In deciding whether a likelihood of confusion exist, courts consider the following non-exhaustive list of factors: (1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the

identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000). Courts also consider additional factors, such as the sophistication of the consumers and the plaintiff's diversification. *See Oreck Corp. v. U.S. Floor Sys. Inc.*, 803 F.2d 166, 173 (5th Cir. 1986).

While the likelihood of confusion is typically a fact question, summary judgment may be proper "if the 'record compels the conclusion that the movant is entitled to a judgment as a matter of law.'" *Abraham*, 781 F. Supp. 2d at 417 (quoting *XTREME LASHES, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009)); *see also Ultimate Living Int'l v. Miracle Greens Supplements, Inc.*, No. 3:05-cv-1745-M, 2007 WL 14258, at *3 (N.D. Tex. Jan. 3, 2007) ("Whether a likelihood of confusion exists is generally a question of fact.") (citing *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 329 n.36 (5th Cir. 2006)). No single factor listed above is dispositive, and a finding of likelihood of confusion does not require a positive finding on a majority of these "digits of confusion." *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). When applying these factors to the case at hand, the Court must consider each "digit" in light of the case's specific circumstances. *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483-84 (5th Cir. 2004). The Court must also "'consider the marks in the context that a customer perceives them in the marketplaces, which includes their presentation in advertisements.'" *Id.* at 485 (quoting *Elvis Presley Enters.*, 141 F.3d at 197).

1. <u>Strength of Plaintiff's Mark.</u> Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark. *See*

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 478-79 (5th Cir. 2008). The strength of the mark is determined by two factors: "(1) the mark's classification into one of five categories, each of which is entitled to a different level of protection, and (2) the standing of the mark in the marketplace." *Abraham*, 781 F. Supp. 2d at 418. Trademarks may be classified into five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *See Two Pesos*, 505 U.S. at 768. The latter three categories "are deemed inherently distinctive and are entitled to protection." *Id.*

The United States Court of Appeals for the Fifth Circuit has stated that these categories can be considered a spectrum, and "within this spectrum the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks." *Am. Rice*, 518 F.3d at 330 (internal bracket, quotation, and citation omitted). A generic term is "one which identifies a genus or class of things or services, of which the particular item in question is merely a member." *Union Nat'l Bank of Tex. v. Union Nat'l Bank of Tex.*, 909 F.2d 839, 845 (5th Cir. 1990). A descriptive term is one that "identifies a characteristic or quality of the article or service." *Id.* (internal quotation marks and citation omitted). A descriptive term only warrants protection where it has a secondary meaning. *See XTREME LASHES,* 576 F.3d at 227. A suggestive term "suggests rather than describes some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of goods and services." *Id.* (quotation and citation omitted).

Arbitrary and fanciful terms are "those which are either coined words or words which are not suggestive of the product or service." *Id.*

Defendant argues that Plaintiff's mark is not strong and is entitled to little to no protection. Defendant argues that the evidence indicates that Plaintiff's mark should be classified as descriptive and that it has no secondary meaning to provide it protection. *See* Dkt. No. 39-1 at 22-23. Defendant alternatively argues that, even if the mark is found to be suggestive, it is not entitled to absolute protection. *See id.* at 23. Plaintiff responds that its mark is incontestable under the Lanham Act and, as such, enjoys a "conclusive presum[ption]" that it has attained secondary meaning. Dkt. No. 51 at 18. Alternatively, Plaintiff argues that there is "ample evidence" that "U.S. Risk" is a suggestive mark and thus, inherently distinctive and deserving of protection. *Id.* at 19. Plaintiff further argues that its position in the marketplace, length of time using the mark, and strong consumer recognition as well as the money spent promoting and marketing the "U.S. Risk" mark increase the mark's strength. *See id.* at 19-22.

In its Rebuttal [Dkt. No. 55] and in its Supplemental Motion [Dkt. No. 88-1], Defendant makes several additional arguments in response to Plaintiff's summary judgment opposition. Defendant first argues that Plaintiff cannot assert that its mark is incontestable because such an argument cannot only be used as a "shield" that "protects Plaintiff from cancellation of its mark by another user." Dkt. No. 55 at 2. Alternatively, Defendant contends that, even if the mark is incontestable, it is only incontestable as to the services specified in the Section 8 and Section 15 affidavits filed by Plaintiff and that there is no evidence to support a claim that

those services are the same services offered by Defendant. *See id.* In a similar vein, Defendant argues that, to the extent that Plaintiff's mark is found to be strong, it must be strong in the same services as Defendant or its strength has no weight on the likelihood of confusion analysis. *See id.* at 8. Finally, Defendant asserts that Plaintiff should be judicially estopped from asserting certain arguments related to the "US" portion of its mark and also asserts that, even if Plaintiff's mark is strong and warrants protection, Defendant's use of the mark is a fair use. *See id.* at 3-8.

The undersigned will address each of Defendant's arguments and Plaintiff's responses in turn.

*a. The Incontestability of "U.S. Risk."* Defendant is mistaken that Plaintiff cannot assert the incontestable nature of its mark as evidence of its strength. The United States Supreme Court has noted that the Lanham Act "nowhere distinguishes between a registrant's offensive and defensive use of an incontestable mark." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985). Moreover, the Fifth Circuit has recognized that a mark's status as incontestable can be considered when determining the strength of a mark. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330-31 (5th Cir. 2008) ("Moreover, ARI's mark is incontestable, which means that ARI's mark is 'protected from challenge by a presumption of validity.'); *id.* ("Furthermore, even if the mark is descriptive with an acquired secondary meaning, its incontestable status provides ARI protection."); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184-85 (5th Cir. 1980) ("An 'incontestable' mark cannot be challenged as lacking secondary meaning; such marks are conclusively presumed to be nondescriptive or to have acquired

secondary meaning. This perhaps the most significant benefit that being 'incontestable' a 'suggestive' if not 'arbitrary' term as applied to the status it describes confers on a mark." (citations omitted)). Plaintiff presented evidence that Plaintiff's mark is incontestable. *See* Dkt. No. 51-1 at 1-2 (¶ 4). While this is a rebuttable presumption, Defendant offered little evidence to rebut this presumption. At best, this supports the conclusion that a fact issue exists with respect to the status of Plaintiff's mark.

Defendant argues that, even if the mark is incontestable and therefore strong, it is only strong in relation to the service areas in which Plaintiff operates. *See* Dkt. No. 55 at 2. Defendant offers no case law in supports of its position. *See id.* According to Defendant, Plaintiff offers services related only to insurance – insurance underwriting, brokerage, administration and claims managements service areas. *See id.* (citing Dkt. No. 51-1 at 9). The undersigned notes that, on its registration, Plaintiff also noted that its services were in "commercial and environmental property and casualty insurance." Dkt. No. 51-1 at 9. Plaintiff further contends that the "Insurance Services" and "Risk Management Services" offered by Defendant are also offered by Plaintiff and its subsidiaries operating under the "U.S. Risk" brand and mark. *See* Dkt. No. 39-3 at 23. The evidence, then, is not conclusive, and in fact is in dispute with respect to whether the areas of service overlap.

Even if the services offered by the parties were found to be dissimilar, the Court may appropriately consider the possibility that one party will expand its line to include a similar product. *See Elvis Presley Enters.*, 141 F.3d at 202. Plaintiff

presented evidence, via affidavit, that it previously operated in an area similar to that in which Defendant claims to operate and that it intends to re-enter that area in the not-so-distant future. *See* Dkt. No. 51-1 at 6 (¶ 6). While Defendant argues that there is no evidence to support Plaintiff's claims that it will expand into this area other than "self-serving statements," statements in affidavits such as Plaintiff offers here are sufficient to raise a triable issue of fact as to this issue. *See C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443-44 (5th Cir. 2011) ("Although arguably 'self-serving,' the affidavits are not wholly conclusory, are based on personal knowledge, and create a fact issue as to the cause of the damage to the equipment.").

For these reasons, the undersigned concludes that there is an issue of fact with respect to whether (1) the incontestable nature of Plaintiff's mark may be rebutted; (2) Plaintiff and Defendant operate in the same service area; and, if not, (3) Defendant operates in a zone of natural expansion for Plaintiff. Accordingly, this factor weighs against granting summary judgment.

The undersigned recognizes that Defendant offered two defenses to Plaintiff's incontestable argument: judicial estoppel and fair use. These defenses are addressed below in §§ III(A)(1)(c) & III(A)(9), respectively.

*b. The Nature of "U.S. Risk."* As discussed above, Plaintiff's trademark's incontestable status creates a rebuttal presumption that Plaintiff's mark is descriptive with secondary meaning and, thus, a strong mark. Defendant disagrees, and Plaintiff argues that, even if its mark is not presumptively strong, it is suggestive.

Federal registration of a mark is prima facie evidence of the mark's validity. *See Ultimate Living Int'l,* 2007 WL 14258 at *3 (citing 15 U.S.C. §§ 1057(b), 1115(a)). Therefore, the mark is presumptively suggestive, although Defendant may rebut the presumption by establishing that the mark is merely descriptive. *See id.* (citations omitted). To rebut the presumption of suggestive nature, Defendant states that many companies use the terms "U.S." or "US" to convey a national presence and that many companies use the term "Risk" to convey a type of product or service offered. Without even considering what the "U.S." in "U.S. Risk"represents,[1] the undersigned is not convinced that Defendant has rebutted the presumption of a suggestive mark to the point that no genuine dispute of material fact remains.

A suggestive terms suggests, but does not describe, an attribute of the services at issue; rather, the consumer must exercise her imagination to apply the trademark to the good. *See XTREME LASHES,* 576 F.3d at 227. With respect to "U.S. Risk," the consumer must exercise some imagination to associate the mark with a national insurance company. The mark uses "U.S.," which can signify a national or nationwide presence,[2] and "Risk" to signify a company dealing with risk – mitigation thereof, help where risk is involved, managing risk, or some sort of goods and/or services related to risk. While Defendant does present evidence that the term "U.S." appears frequently in a number of trademarked names and

---

[1] The undersigned recognizes that Plaintiff contends that "U.S." stands for "Unimark Special" as opposed to "United States."

[2] Again, the undersigned recognizes that Plaintiff contends that "U.S." stands for "Unimark Special," but that is not relevant to what it might relay to consumers.

registration, only one seems to be related to the insurance industry, and none of them are followed by the word "Risk." *See* Dkt. No. 55 at 6-7.

The arguments and evidence presented by both sides raise factual issues and questions that should be weighed by a jury. As a result, the undersigned cannot say with certainty that the mark is suggestive; rather, that is for a jury to determine. This factor, then, weighs against granting Defendant's motion for summary judgment.

*c. Defendant's judicial estoppel argument.* Defendant argues that Plaintiff's claims are barred by judicial estoppel, as the issue has already been litigated before the Patent and Trademark Office ("PTO") and Trademark Trial and Appeal Board ("TTAB"). *See* Dkt. No. 88-1 at 4. More specifically, Defendant appears to argue that Plaintiff is judicially estopped from arguing that Plaintiff's mark is suggestive, or inherently distinctive, because Plaintiff previously argued that the "U.S." in its mark stood for "United States" and that Plaintiff is now arguing that the "U.S." in its mark stands for "Unimark Special." *See* Dkt. No. 88-1 at 4-7.

Where a party successfully urges a particular position in a prior legal proceeding, the doctrine of judicial estoppel prevents it from "taking a contrary position in a subsequent proceeding where its interests have changed." *Liberto*, 441 F.3d at 328. Judicial estoppel applies only when: (1) the position of the party to be estopped is clearly inconsistent with its previous one, and (2) the party convinced a court to accept that previous position. *See id.*

In its TTAB petition, Plaintiff primarily argued that registration of "U.S. Risk" should not be denied based on the inclusion of "U.S." *See* Dkt. No. 88-2.

Plaintiff's main argument was that its composite mark was "not primarily geographically descriptive" and "at most suggestive with respect to the recited services." *Id.* at 17. The TTAB agreed, finding that consumers would not "perceive the mark as having a primarily geographical significance." *Id.* at 23.

Defendant argues that Plaintiff cannot now assert that the "U.S." in its mark stands for something other than United States. Plaintiff responds that its position that the mark "U.S. Risk" is incontestable is not related to what "U.S." stands for and that, moreover, it never asserted in its TTAB Petition that "U.S." stood for "United States" (or, for that matter, "Unimark Special"). *See* Dkt. No. 102 at 7-8.

The undersigned agrees with Plaintiff. It is not conclusively evident from the TTAB appeal that Plaintiff's position in the instant case is "clearly inconsistent" with its previous position. That is, nowhere in Plaintiff's TTAB Petition does it discuss what "U.S." signifies; rather, it discusses whether the use of "U.S." makes the mark incapable of registration. *See* Dkt. No. 88-2. As such, Defendant's judicial estoppel defense does not preclude Plaintiff's arguments and does not warrant summary judgment in Defendant's favor.

2. <u>Similarity of Designs</u>. In considering the similarity between the marks, a more detailed description of the marks will be helpful. Plaintiff's mark is a simple mark. It contains the words "U.S. Risk" in bold, large typeface with a globe to the left of the words. *See* Dkt. No. 39-1 at 25. The letters in Plaintiff's mark are both upper and lower case, and the logo as a whole is a blue-grey color. *See id.* Defendant's mark contains more words and colors. It contains the words "USRISK" in all caps, with the letters "US" in white and "RISK" in red, both on a block of blue

-20-

coloring. *See* Dkt. No. 51-1 at 13. To the left of the words is a globe, drawn to look like an anchor, which is blue and sits on red coloring. Underneath this design are the words "United States Risk Management, L.L.C.," written in blue and in much smaller font than "USRISK." *Id.*

Defendant essentially argues that, when the marks are compared, the overall impression of the marks is that they are "completely different" and that, as such, this factor supports summary judgment in Defendant's favor. *See* Dkt. No. 39-1 at 25-26. Plaintiff argues to the contrary – that a high degree of mark similarity exists and, therefore, the likelihood of confusion is high. *See* Dkt. No. 51 at 22.

Before assessing the parties' arguments, the undersigned notes that Plaintiff argued that the "dominant features" of the mark should be more closely considered when determining the marks' similarity. Dkt. No. 51 at 24. In its supplemental motion, Defendant argues that, in so doing, Plaintiff is attempting to "dissect" Defendant's mark in violation of the "anti-dissection" rule. Dkt. No. 88-1 at 2. Plaintiff responds that it was simply arguing, in accordance with Fifth Circuit law, that it is proper for the Court to consider the mark's dominant features in assessing the marks' similarity. The undersigned agrees that Plaintiff's arguments were not made in violation of precedent and that, to the extent proper, the undersigned may examine the mark's dominant features. *See XTREME LASHES*, 576 F.3d at 228. In any event, the undersigned analyzes the similarity of the marks in accordance with Fifth Circuit precedent.

Mark similarity is "determined by comparing the marks' appearance, sound, and meaning." *Elvis Presley Enters.,* 141 F.3d 188, 201 (5th Cir. 1998). Even in

situations where the two marks at issue are distinct, confusion may result if consumers may assume that the similarities in the designations indicate a connection between the two marks. *Id.* "'The relevant inquiry is whether, under the circumstances of the use,' the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Id.*

In *U.S. Risk of Virginia, LLC v. Lighthouse Programs LLC*, the parties' marks both emphasized the same word: "Lighthouse." Civ. No. 3:06-cv-2033-L, 2008 WL 4387026, at *6 (N.D. Tex. Sept. 26, 2008). There, the court noted that the parties' names focused on the word "Lighthouse" and that, even though there were other words present, the focus on the same word – "Lighthouse" – made the names extremely similar. *See id.* The court then analyzed the graphic images, noting that the image used was the same – a lighthouse – and finding that even though the style of the lighthouses were different – one realistic, one more modern – the marks were still similar. *See id.* Based on the focus on the same word and the use of the same image, the marks could warrant a finding of similarity, which weighed in the plaintiffs' favor in the likelihood of confusion analysis. *See id.* Similarly, in *Sun-Fun Prods., Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 190 (5th Cir. 1981), the Court of Appeals determined that the similarity of the design portion of a logo coupled with the similarity of the logos' format required a submission of the similarity issue to the jury.

In *Safeway Stores, Inc. v. Safeway Ins. Co.*, 657 F. Supp. 1307, 1313-14 (M.D. La. 1985), however, the court found that the use of other words with the one common word – "Safeway" – gave rise to sufficient differentiation, and the court

determined that the names were not similar enough to support a finding of likelihood of confusion. And the Fifth Circuit has held that the "overall impression of the mark is a more important consideration than the textual identity of words contained in the mark." *Pulse EFT Assoc. v. Sears Roebuck & Co.*, No. 99-20967, 247 F.3d 240, 2001 WL 43454, at *3 (5th Cir. Jan. 2, 2001).

Here, the marks both contain the same word – "U.S. Risk"/"US RISK" – and both contain the same symbol – a globe. *See* Dkt. No. 39-1 at 25. As an initial matter, the undersigned notes that the marks both sound the same, which is a factor in analyzing their similarity. *See Elvis Presley Enters.*, 141 F.3d at 201. In analyzing each mark as a whole, the undersigned must also consider the commercial impression created by the marks. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 261 (5th Cir. 1980). In examining these marks on their websites or other commercial contexts, there is no indication that they are not in the same industry or offering the same or similar services – both say "U.S. Risk," and they both include globes. This tends to support a conclusion that they could be found to be similar.

Moreover, while Defendant's mark contains the additional words under "US RISK," the dominant feature is the "U.S. Risk" wording. *See XTREME LASHES*, 576 F.3d at 228. This, too, supports a finding of similarity. Unlike *Safeway Stores*, this is not a situation in which additional wording on the logo clearly differentiates between the two companies. In *Safeway Stores*, the plaintiff's mark was "a soft square s" with the word "Safeway," and the defendant's mark included the words "Insurance Company" after "Safeway," to indicate its business area. *Safeway Stores,*

657 F. Supp. at 1314-15. While, here, Defendant's mark has the additional wording, its words do not clearly differentiate between the parties' marks or industries. Therefore, the additional words on Defendant's mark do not alone "minimize[] any potential confusion." *Id.*

As in *Sun-Fun*, the undersigned recognizes the identifiable differences in the marks: the capitalization of the letters, the color scheme, and the additional words on Defendant's mark. The undersigned does not suggest that a jury would not conclude the marks are too dissimilar to warrant an infringement finding.

Rather, the undersigned merely concludes that the Court is not the proper party to weigh these similarities and differences. *See Sun-Fun*, 656 F.2d at 190; *compare Ultimate Living Int'l*, 2007 WL 14258, at *4 ("Despite the obvious similarity in the sound and meaning of the marks, there is obvious dissimilarity in their appearance as primarily presented to consumers. Therefore, the factor is inconclusive and weighs in neither party's favor."). As such, this factor weighs against granting summary judgment in Defendant's favor.

3. <u>Similarity of Products</u>. The greater the similarity between the products or services at issue, the greater the likelihood that potential purchasers would be confused. *See Oreck*, 803. F.2d at 171. But, even where the products are dissimilar, the Court may appropriately consider the possibility that one party will expand its line to include a similar product. *See Elvis Presley*, 141 F.3d at 202. Direct competition is not required. *See id.* "When products or services are noncompeting, the confusion at issue is one of sponsorship, affiliation, or connection." *Id.*; *see also Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 598 (5th

Cir. 1985) ("Complementary products have been held particularly susceptible to confusion."). The possibility of affiliation or sponsorship confusion increases when the defendant's services are in a market into which the plaintiff would naturally expand. *See Elvis Presley*, 141 F.3d at 202. Actual intent to expand need not exist; rather, consumer perception is the controlling factor. *See id.* ("If the consumers believe, even falsely, that the natural tendency of producers of the type of goods marketed by the prior user is to expand into the market for the type of goods marketed by the subsequent user, confusion may be likely.").

The undersigned's focus, then, is on whether the services offered are similar enough to cause confusion or whether Defendant's business is in a market into which Plaintiff would naturally be perceived to expand. *See Elvis Presley*, 141 F.3d at 202. The more diversified and pervasive Plaintiff's mark is, the greater the likelihood of confusion. *See id.* at 203.

Defendant argues that the parties are not in the same business because Plaintiff is in the insurance business and Defendant is in the industrial hygiene, environmental, and safety business. *See* Dkt. No. 39-1 at 26. Defendant further argues that there is no evidence to support a finding that Plaintiff will expand into Defendant's business arena. *See id.* at 27-28. Plaintiff claims that the parties do offer similar products and services and, moreover, that, even if they do not offer similar services, Defendant's services are in Plaintiff's "natural zone of expansion." Dkt. No. 51 at 26-27. In support of its argument that the services are the same, Plaintiff notes the section on Defendant's website highlighting its "insurance services." *See* Dkt. No. 51 at 26; Dkt. No. 51-2 at 24.

There is no conclusive evidence that those are the <u>same</u> services, but it does reflect that both parties at least engage in the insurance industry and might work with the same or similar customers. A fact question exists with respect to whether they are the same or operate with the same consumers. Moreover, as discussed more fully above, *see* § III(A)(1)(a) above, Defendant may be in Plaintiff's natural zone of expansion. This is further supported by Plaintiff's extensive diversification. Plaintiff's trademark registration mentions environmental property and casualty insurance, and Plaintiff has averred by affidavit that Plaintiff is planning to expand to compete directly with Defendant.

Based on the evidence before the Court, the undersigned cannot say with certainty that the parties do not offer similar services or that Defendant does not operate in Plaintiff's natural zone of expansion. Therefore, a genuine dispute of material fact exists with respect to whether there is a similar product or service in this case.

4. <u>Identity of Retail Outlets and Purchasers</u>. Another factor that the Court considers in determining whether there is a likelihood of confusion is the identity of the retail outlets or service facilities and the identity of the purchasers of the product or services. *See Amstar*, 615 F.2d at 262. When the outlets for, and predominant consumers of, Plaintiff's and Defendant's services are dissimilar, the possibility of confusion, mistake, or deception lessens. *See Exxon Corp. v. Tex. Motor Exchange,* 628 F.2d 500, 505 (5th Cir. 1980).

Defendant claims that the parties do not have the same customers because they operate in different industries. *See* Dkt. No. 39-1 at 28. Plaintiff argues the opposite. *See* Dkt. No. 51 at 27.

For the reasons detailed above, *see* §§ III(A)(1)(a) & III(A)(3) above, the undersigned concludes that a fact issue remains on this factor. As such, this factor weighs against granting summary judgment in Defendant's favor.

5. <u>Similarity of Advertising Media Used</u>. The Court should also consider the similarity of the parties' advertising media because "[t]he greater the similarity in the campaigns, the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exchange*, 628 F.2d 500, 506 (5th Cir. 1980). When analyzing this factor, courts often consider whether the parties use the same avenues of advertising – radios, television, print – or attend the same trade shows. *See Oreck*, 803 F.2d at 172. Courts also consider the similarity of advertising methods in the context of the similarity of the marks at issue. *See id.* at 173. That is, if the marks only slightly resemble one another, the likelihood of confusion from advertising is "negligible." *See id.* "The danger of confusion only arises when the trademarks are deceptively similar." *Id.* Another important consideration when analyzing this factor is whether the use of the allegedly infringing mark suggests affiliation with, sponsorship by, or endorsement by the plaintiff's mark. *See Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 646 (N.D. Tex. 2009).

Defendant argues that Plaintiff's discovery responses on this issue are not sufficiently detailed and that, because Plaintiff has not provided appropriate responses, there is no evidence to support a similarity of advertising. Defendant's

arguments would have served it better in a discovery motion. Plaintiff submitted testimony via affidavit that Plaintiff advertises in trade magazines, publications, and email blasts, on Plaintiff's and its subsidiaries' websites, and through word of mouth and face-to-face meetings and also has employees attend various trade shows and other speaking engagements. *See* Dkt. No. 51-1 at 7 (¶ 21). While Defendant argues that these advertising outlets are used by many companies, *see* Dkt. No. 55 at 11, in many decisions discussing this factor, the parties utilized these same types of advertising outlets, and the fact that they were common did not weigh for or against the party asserting infringement. *See, e.g.*, *Exxon Corp.*, 628 F.2d at 506 (noting that both parties used radio, television, newspaper ads, yellow page ads, and large signs); *XTREME LASHES,* 576 F.3d at 229 (finding that both parties advertising in print advertisements, direct mailings, and internet promotions supports an inference that they use the same advertising channels).

The marks at issue are similar in that they both contain "U.S. Risk" or "USRISK" in large print and utilize a globe. Situated directly side-by-side in a trade magazine, they might be distinguishable, but it is not clear whether the marks on different pages or in different issues of a magazine would be confusing. This factor cannot be examined in a vacuum, and, as discussed more fully below, *see* § III(A)(6) below, there is a fact issue with respect to Defendant's intent in designing and using its mark. Moreover, in face-to-face communication and speaking, the two names sound exactly the same. Drawing all inferences in Plaintiff's favor, then, there is a genuine dispute of material fact with respect to this factor and whether it

supports Plaintiff's or Defendant's position on the infringement claim. As such, this factor weighs against granting Defendant's summary judgment motion.

6. _Defendant's Intent_. Proof of Defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement, but, if such an intent can be shown, it may provide compelling evidence of a likelihood of confusion. _See Oreck_, 803 F.2d at 173 (citing _Exxon_, 628 F.2d at 506). There must be evidence, however, that Defendant sought to capitalize on the plaintiff's reputation, _see Sun Banks_, 651 F.2d at 318, and there must be an attempt to "pass off" Defendant's goods as those of Plaintiff, _see Amstar_, 615 F.2d at 263. In fact, courts often examine whether the evidence suggests that the alleged infringer knew the consumers would identify their products with the plaintiff's trademarks. _See, e.g._, _Smack Apparel_, 550 F.3d at 481; _Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc._, 510 F.2d 1004, 1012 (5th Cir. 1975); _Abraham_, 781 F. Supp. 2d at 423-24. The inquiry is whether the use of another's trademark was intended to bring the owner of the mark to mind. _See Abraham_, 781 F. Supp. 2d at 424. If so, this factor will weigh heavily in favor of finding infringement.

The parties present conflicting evidence of Defendant's intent. Defendant claims that it did not intend to utilize Plaintiff's mark for its gain and that there is no evidence to the contrary. _See_ Dkt. No. 39-1 at 30. Defendant further argues that, because the parties are in separate markets, Defendant could not have had bad intent. _See id._ Plaintiff contends that there is ample evidence of Defendant's intent, most significantly, the fact that Defendant asked for Plaintiff's consent to register

the business name "U.S. Risk Management, LLC" in Texas and that Plaintiff denied the request and put Defendant on notice of its senior mark. *See* Dkt. No. 51-1 at 5 (¶ 15). Moreover, prior to Defendant's request, Plaintiff sent Defendant a cease-and-desist letter when Plaintiff learned that Defendant was using advertising and selling services and products under the name "U.S. Risk." *See id.* at 5 (¶ 14).

Discerning Defendant's intent under these circumstances is not clear cut or without question. Certain issues surrounding Defendant's intent are in dispute. Both parties present evidence supporting their arguments, but the undersigned is required to view the facts in the light most favorable to Plaintiff. In so doing, the undersigned concludes that a genuine dispute of material fact exists and that the undersigned cannot weigh whether this factor falls in favor of either party. As such, this factor weighs against granting Defendant's summary judgment motion.

7. <u>Actual Confusion</u>. "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amstar*, 615 F.2d at 263. For evidence of actual confusion to support a trademark infringement claim, there must be evidence connecting the confusion to a representation made by the alleged infringer. *See Scott Fetzer Co.*, 381 F.3d at 487. That said, even if there is evidence of actual confusion, the Court must analyze whether it entails isolated incidents of uncertainty or a pattern of actual confusion. *See Sun Banks*, 651 F.2d at 319. The Fifth Circuit has given little weight to evidence of confusion of 15 individuals over a period of three years, *see id.*, as well as to three instances of actual confusion after nearly 15 years of competition, *see Amstar*, 615 F.2d at 263.

Plaintiff argues that it has the following evidence of actual confusion: (1) a conversation at an industry conference wherein an attendee asked Plaintiff's Senior Vice President and General Counsel, Richard Schwartz, if he was with Defendant upon hearing the term "U.S. Risk," *see* Dkt. No. 51-1 at 6 (¶ 19); (2) a conversation between Plaintiff's CEO – Randall Goss – and an individual at Lloyd's of London wherein the individual thought that Mr. Goss worked for Defendant upon hearing "U.S. Risk," *see* Dkt. No. 51-5 at 22 (¶ 3); (3) a senior U.S. Risk, Inc. broker/underwriter's receiving a telephone call in early 2012 from an insurance agent who misidentified Plaintiff as Defendant, *see id.* at 24; and (4) Plaintiff's receiving a quote from an outside vendor for some work to be done at Plaintiff's headquarters, and that quote having Plaintiff's address, but the logo attached to the quote being that of Defendant, *see id.* at 2, 5. Defendant points out that, while these may be instances of confusion, none of them show confusion by consumers or individuals who were attempting to purchase Plaintiff's services. *See* Dkt. No. 39-1 at 31-32.

The undersigned agrees that evidence of actual confusion on the part of consumers is the most relevant evidence. *See XTREME LASHES*, 576 F.3d at 230. Moreover, the undersigned recognizes that the evidence must demonstrate a connection between the confusion and a representation made by the alleged infringer. *See Scott Fetzer Co.*, 381 F.3d at 487. That said, Plaintiff has presented evidence that shows a fact issue as to actual – or a likelihood of – confusion, which was all Plaintiff need do as to this factor for purposes of avoiding summary judgment. *See id.* at 231. It does not mean that actual confusion exists; rather,

"[d]iscovery and a survey should illuminate actual or potential confusion." *Id.* For purposes of determining a summary judgment motion, however, Plaintiff has demonstrated that a likelihood of – or even actual – confusion could exist. *See U.S. Risk of Va.*, 2008 WL 4387026, at *7-*8 (finding that confusion of conference attendees could constitute evidence of a likelihood of confusion). Therefore, this factor weighs against granting Defendant's motion for summary judgment.

8. <u>Other Factors</u>. Courts have analyzed other factors in making a likelihood of confusion determination. These factors include the degree of care in making the purchase and the diversification of the plaintiff's company. *See Armco*, 693 F.2d at 1160-61. Defendant argues that both factors weigh in its favor.

a. *Degree of care exercised by potential buyers*. Where potential consumers are buying for professional or institutional purposes at a high cost, the consumers are virtually certain to be informed, deliberative buyers. *See Oreck*, 803 F.2d at 173. Defendant argues that consumers spend a great deal of time researching and evaluating the parties' products and that they are not "impulse purchases." Plaintiff does not refute this point. Accordingly, this factor weighs in Defendant's favor.

b. *Diversification/Natural Zone of Expansion*. As discussed more fully in §§ III(A)(3) & III(A)(4) above, there is a fact issue with respect to whether the parties directly compete and, if they do not currently compete, whether Defendant's services are in Plaintiff's natural zone of expansion. As such, this factor weighs against granting Defendant's motion for summary judgment.

9. <u>Defendant's Fair Use Defense</u>. In its Rebuttal [Dkt. No. 55], Defendant for the first time raises the affirmative defense of fair use and moves for summary judgment on it, arguing that, even if a likelihood of confusion exists, Defendant's use of the trademark constituted fair use and thus was permissible. This argument was improper for two reasons. First, at that time, Defendant had not pleaded the affirmative defense of fair use. *See* Dkt. No. 37. A party may only move for summary judgment on an affirmative defense that has been properly pleaded. *See Canal Ins. Co. v. J-Lin Trucking, Inc.*, No. 2:95CV156, 1996 WL 672107, at *2 (N.D. Miss. Sept. 4, 1996) (finding that an issue not raised in the pleadings was not a proper basis for granting summary judgment). The undersigned is not stating that the defense was waived – it was not – but only that Defendant could not, at least without leave of court, move for summary judgment on it at the time that it did.

This is the case, in part, because of the second reason that the argument is improper: Defendant cannot raise new arguments in a reply brief. *See Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729 n.3 (S.D. Tex. 2010). Defendant's efforts to move on this defense in its reply brief (which Defendant entitled its "Rebuttal") is particularly inappropriate where Defendant later moved to amend its answer and add the affirmative defense of fair use, *see* Dkt. No. 66-3 at 2, and where, after Judge Lynn granted the motion to amend, Defendant filed a motion for leave to supplement its motion for summary judgment, *see* Dkt. No. 88, which Judge Lynn granted, *see* Dkt. No. 91. It was in this supplemental motion that Defendant could have properly sought summary judgment on its newly pleaded affirmative defense – as it did, with leave of court, on other new affirmative

defenses that it was asserting for the first time and would only later receive leave to plead.

Because Defendant did not follow the proper procedure in asserting its fair use summary judgment motion, Plaintiff did not have an opportunity to respond to it. As such, Defendant's motion on this defense should be denied.

10. <u>Conclusion</u>. After thoroughly analyzing the digits of confusion to determine whether they weigh in favor of granting summary judgment to Defendant, the only factor that conclusively supports Defendant's motion is that of sophistication of buyers. With respect to the remaining factors, at best, there is a genuine dispute of material fact. Moreover, on this record, Defendant's affirmative defenses of fair use and judicial estoppel do not warrant summary judgment.

Thus, after careful consideration of the interplay of the factors, the undersigned concludes that Defendant has not satisfied its summary judgment burden in showing that a likelihood of confusion does not exist as a matter of law. For these reasons, the undersigned recommends denying Defendant's motion for summary judgment with respect to Plaintiff's federal trademark infringement claim and Defendant's affirmative defenses of fair use and judicial estoppel.

## B. False Designation of Origin, Federal Unfair Competition, Common Law Trademark Infringement, and Common Law Unfair Competition Claims.

Plaintiff's claims of false designation of origin, federal and common law unfair competition, and common law trademark infringement are all governed by the same likelihood of confusion inquiry used to determine whether trademark infringement has occurred. That is, if a likelihood of confusion exists, then the

causes of action are sustainable, and, if there is no likelihood of confusion, the causes of action fail. *See Scott Fetzer Co.*, 381 F.3d at 483-84 (holding that federal and Texas unfair competition and Texas trademark infringement are all governed by the same likelihood of confusion standard governing federal trademark infringement); *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008) ("The elements of trademark infringement and false designation of origin are identical, and the same evidence will establish both claims."). The parties do not dispute that the likelihood of confusion inquiry is the proper analysis. *See* Dkt. No. 39-1 at 35, 45, & 46; Dkt. No. 51 at 36, 43, & 44. As fully detailed above, there is a genuine dispute of material fact with respect to likelihood of confusion. As such, the undersigned recommends denying Defendant's Motion for Summary Judgment with respect to Plaintiff's false designation of origin, federal and common law unfair competition, and common law trademark infringement claims.

## C.    Petition for Cancellation.

Plaintiff seeks cancellation of Defendant's allegedly infringing mark. The Lanham Act permits cancellation of the registration of a mark on the principal register by anyone "who believes that he is or will be damaged ... by the registration." 15 U.S.C. § 1064. The party seeking to cancel the registration of a mark must prove two elements: "(1) that it has standing; and (2) that there are valid grounds for canceling the registration." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). Plaintiff and Defendant focus their claims and arguments on the second of these two elements.

Plaintiff seeks to cancel Defendant's mark based on Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), which provides that the PTO may refuse to register a trademark that "'[c]onsists of or comprises a mark which so resembles … a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive.'" Dkt. No. 51 at 38 (quoting 15 U.S.C. § 1052(d)). The law states – and the parties agree – that the test for cancellation under Section 2(d) is the same likelihood-of-confusion standard that governs federal trademark infringement. *See Re/Max Int'l Realty, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009); Dkt. No. 39-1 at 37-38; Dkt. No. 51 at 37-38. As fully detailed above, there is a genuine dispute of material fact with respect to likelihood of confusion. As such, the undersigned recommends denying Defendant's Motion for Summary Judgment with respect to Plaintiff's petition for cancellation of Defendant's trademark.

## D.   Federal Dilution and Texas Dilution Claims.

At the core of Plaintiff's remaining causes of action, and Defendant's motion for summary judgment, are claims of dilution. Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product. *See* 15 U.S.C. § 1127. The Federal Trademark Dilution Revision Act ("FTDRA") bars "use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). The Texas anti-dilution statute is

-36-

somewhat less stringent and provides relief to owners whose "distinctive" marks are diluted through blurring or tarnishment. *See* TEX. BUS. & COM. CODE § 16.29.[3] While the FTDRA requires the mark be famous and the Texas dilution statute requires the mark be distinctive, the analysis's second step – that the defendant used the mark in a manner that dilutes it – is the same.

In its Motion for Summary Judgment, Defendant contends that Plaintiff only brought a dilution by blurring claim. *See* Dkt. No. 39-1 at 42. However, Plaintiff did base its dilution cause of action on both blurring and tarnishment. *See* Dkt. No. 37 at 9 (¶ 39); Dkt. No. 51 at 40. Plaintiff responded to Defendant's argument regarding blurring, noting that Defendant only moved for summary judgment on this theory. In its reply brief (entitled Defendant's "Rebuttal"), Defendant then asserts some arguments with respect to a tarnishment theory. *See* Dkt. No. 55 at 17-18. But the scope of a reply brief should be limited to addressing the arguments raised by the response. *See Petty*, 702 F. Supp. 2d at 729 n.3. Thus, the undersigned concludes that it was not appropriate for Defendant to raise a new argument regarding tarnishment in its Rebuttal, because Defendant cannot put Plaintiff to its burden on summary judgment in its reply briefing. As such, the undersigned will

---

[3] Effective September 1, 2012, Texas enacted a new dilution statute. *See* TEX. BUS. & COM. CODE § 16.103. The statute is intended to make the Texas dilution standard "substantially consistent" with federal law, including changing the dilution analysis so that only "famous" – as opposed to "distinctive" – marks received protection from dilution. Notes to TEX. BUS. & COM. CODE § 16.103. This new statute does not apply to the instant case, however, as the Statutory Notes state: "The changes in law made by this Act do not affect any suit, proceeding, or appeal pending on the effective date of this Act. A suit, proceeding or appeal pending on the effective date of this Act is governed by the law in effect on the date the [lawsuit] was filed, and the former law is continued in effect for that purpose." As such, the analysis under the Texas statute remains the same: whether the mark is distinctive.

not consider whether summary judgment is appropriate as to dilution by tarnishment because Defendant did not properly seek summary judgment as to Plaintiff's claim on this theory.

a. *Famous Mark.*

A mark is "famous" if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. *See Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 643 (N.D. Tex. 2009) (citing 15 U.S.C. § 1125(c)(2)(A)). In determining fame, a court "may consider all relevant factors," including the duration, extent, and geographic reach of advertising and publicity of the mark; the amount, volume, and geographic extent of sales of goods or services offered under the mark; the extent of actual recognition of the mark; and whether the mark was registered. *Dallas Cowboys Football Club*, 616 F. Supp. 2d at 643 (citing 15 U.S.C. § 1125(c)(2)(A)).

Defendant argues that Plaintiff's mark is not famous because the two parties do not operate in the same industry. Essentially, Defendant's argument seems to be that a mark that is distinctive and famous only within a specific market segment – here, the insurance market – can only be protected from dilution in that specific market segment. *See* Dkt. No. 39-1 at 41; *Pulse EFT*, 2001 WL 43454 at *5. While Defendant's position is correct, Defendant makes no arguments and presents no evidence as to why Plaintiff's mark is, or is not, famous in any market, insurance or otherwise. *See* Dkt. No. 39-1 at 40-41.

Plaintiff correctly notes that there is no bright line rule for determining whether a mark is famous. In support of its claim of fame, Plaintiff points to several

evidentiary items, but the undersigned finds most relevant the time and money that Plaintiff has spent marketing, promoting, and selling its products and services to insurance agents and companies across the country. *See* Dkt. No. 51-1 at 2-3, 7, & 23. The undersigned also finds the fact that Plaintiff's mark is federally registered to be important. *See id.* at 9-10; Dkt. No. 51 at 40. Other courts have relied on such factors in determining that a claim for federal dilution exists. *See Dallas Cowboys Football Club*, 616 F. Supp. 2d at 643.

Thus, the undersigned concludes that Plaintiff has met its burden in producing competent evidence to show that a fact issue exists with respect to whether its mark is famous. The undersigned is not suggesting that a jury would find that the mark is famous. Rather, the undersigned simply concludes that, in the face of a genuine dispute of material fact, the Court may not properly weigh the evidence currently in front of it.

### b. Distinctive Mark

A registered mark is "presumed to be distinctive." *S&H Indus.*, 2013 WL 1131077, at *7; *E. & J. Gallo Winery v. Spider Webs Ltd.*, 129 F. Supp. 2d 1033, 1037 (S.D. Tex. 2001). In *S&H Indus.*, the court found that evidence of the plaintiff's rights to its mark and logo as well as its registration of its marks with the PTO were evidence of ownership of a distinctive mark. *See* 2013 WL 1131077, at *7. Defendant seems to ignore this rule and instead argues that the mark is not distinctive because it has not obtained secondary meaning. *See* Dkt. No. 39-1 at 48-49. The undersigned is not convinced by Defendant's argument and concludes that Plaintiff has presented evidence – ownership of its mark and the PTO registration

of it – to support this element of its dilution claim. As such, this factor weighs against granting Defendant's motion for summary judgment.

　　　　*c. Likelihood of Dilution.*

　　While the undersigned has found that evidence exists to support a claim that Plaintiff's mark may be found distinctive, summary judgment may still be appropriate if there is no fact issue with respect to likelihood of dilution by blurring. "Dilution by blurring occurs only when the plaintiff's trade name is used by another as his own trade name, thereby weakening the plaintiff's ability to use the name as a unique identifier of its goods and services." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App. – Dallas 2001, no pet.); *see also E. & J. Gallo Winery*, 129 F. Supp. 2d at 1038. While no precise test exists to determine whether blurring has occurred, the FTDRA provides a non-exclusive list of six factors that courts should consider in determining whether dilution by blurring is likely: "(i) The degree of similarity between the mark or trade name and the famous mark. (ii) The degree of inherent or acquired distinctiveness of the famous mark. (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark. (iv) The degree of recognition of the famous mark. (v) Whether the user of the mark or trade name intended to create an association with the famous mark. (vi) Any actual association between the mark or trade name and the famous mark." *Cottonwood Financial Ltd. v. Cash Store Financial Servs., Inc.*, 778 F. Supp. 2d 726, 746 (N.D. Tex. 2011) (citing 15 U.S.C. § 1125(c)(2)(B)(i)-(vi)).

　　In arguing these factors, the parties essentially revisit three arguments that they previously made in their briefing and that the undersigned has considered

above. *See* Dkt. No. 39-1 at 43-45; Dkt. No. 51 at 41-43. In support of its position, Defendant argues the marks are not substantially similar, the parties do not operate in the same industry, and Defendant did not intend to associate its mark with Plaintiff's mark. Plaintiff argues that the marks are substantially similar, the parties do operate in the same industry, and Defendant's actions evidence intent to associate its mark with Plaintiff's. The undersigned will not revisit these arguments. The undersigned's findings and conclusions here mirror those made in the context of the infringement claim: the undersigned cannot say as a matter of law that the facts warrant summary judgment against Plaintiff's claim of dilution.

Because the undersigned cannot say with certainty that Defendant proved that no evidence exists, or no genuine dispute of material fact exists, with respect to whether Plaintiff's mark is famous or distinct or with respect to whether there is a likelihood of dilution, Defendant's motion should be denied as to Plaintiff's federal and Texas dilution claims.

## E. Unjust Enrichment

Plaintiff's final claim alleges unjust enrichment. In its Amended Complaint, Plaintiff asserts that the "acts of Defendant complained of herein constitute unjust enrichment of Defendant at Plaintiff's expense." Dkt. No. 37 at 11. Defendant argues that, under Texas law, unjust enrichment is not a separate cause of action but rather is a basis for recovering damages. *See* Dkt. No. 39-1 at 50. Defendant argues that, because unjust enrichment is a recovery theory, and summary judgment is proper on all of Plaintiff's claims, there is no evidence that Defendant has been unjustly enriched at Plaintiff's expense. *See id.* Plaintiff does not respond

to Defendant's assertions that unjust enrichment may only be a theory of recovery, and not a separate cause of action but rather simply argues that Defendant is being unjustly enriched by using Plaintiff's mark, which Plaintiff has spent 25 years and over $10 million in marketing, promoting, and selling its products and services. *See* Dkt. No. 51 at 47.

As an initial matter, while some Texas courts have held that unjust enrichment can <u>only</u> be a basis for recovery, others have not taken this more limited view and have held that unjust enrichment <u>is</u> a cause of action. *See, e.g.*, *Newington Ltd. v. Forrester*, No. 3:08-cv-864-G, 2008 WL 4908200, at *3 (N.D. Tex. Nov. 13, 2008). The Court need not reach this issue because, regardless of whether unjust enrichment is a separate cause of action or merely a basis for recovering damages, Defendant's argument fails. The undersigned has explained at length above that summary judgment in Defendant's favor is not proper on Plaintiff's claims. As Defendant's argument for summary judgment on Plaintiff's unjust enrichment claim was predicated on summary judgment being appropriate on all other claims, and Plaintiff presented evidence that created a genuine dispute of material fact as to whether Defendant has been unjustly enriched by Plaintiff's actions, the undersigned concludes that Defendant's motion for summary judgment should be denied with respect to unjust enrichment.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the Court deny Defendant's Motion for Summary Judgment [Dkt. No. 39] and Defendant's Supplemental Motion for Summary Judgment [Dkt. No. 88-1].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 16, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE